Argued November 19, 1931; affirmed January 5; rehearing denied February 2, 1932

## SCHAFER v. SCHAFER ET AL.

(6 P. (2d) 235)

*John A. Jeffrey,* of Portland, for appellant.

*Charles R. Spackman, Jr.,* of Portland, for respondents.

ROSSMAN, J. This is a suit to establish a resulting trust in a parcel of real property known as the Irving Apartments, and to secure an accounting of the profits of that apartment house and of another known as the Arline Apartments. The plaintiff alleges that a trust fund in which he owned an interest was invested by his son, the defendant John Schafer, in the purchase of those two apartment houses. His complaint avers that the fund with which John Schafer purchased these two properties was derived from a partnership which it alleges the plaintiff and his son formed in the year 1903 at Nome, Alaska. At that time John was

18 years of age. The plaintiff contends that commencing with that year the alleged partnership engaged in various activities in different places in Alaska, including the operation of dairies, a restaurant, butchering livestock, mining, performing labor upon a railroad, operating an express wagon, etc. Apparently the two men were rarely in the same community and were at times 1,700 miles apart. Likewise, the two were seldom engaged in the same activity; thus, at times John was employed as a day laborer while his father, the plaintiff, many miles away was erecting a dwelling house on property owned by himself or endeavoring to sell some real estate. In 1911, the defendant John Schafer purchased a dairy at Prince Rupert, British Columbia, which in December of 1916 he sold, and then moved to Portland. Some months later he purchased the two aforementioned apartment houses. The deed which conveyed the Irving Apartments named as grantees John Schafer and his wife, Jean Schafer. The deed to the Arline Apartments named as the grantees the plaintiff, his wife, a son Henry, and the defendant John Schafer. The latter denied that he and his father had ever formed a partnership. He testified that upon reaching the age of 26, in the year 1911, having constantly given all of his earnings to his parents, he declared his emancipation by announcing to the family his intention of engaging in business for himself. He added that at that time he went to Prince Rupert, British Columbia, and later purchased the dairy aforementioned with money obtained by himself. He also testified that the money with which he purchased the Irving Apartments was in part the proceeds of the sale of that dairy. Further, he testified that he contributed one-third of the purchase price of the Arline Apartments, and had his name inserted in the deed as a

grantee, with the plaintiff's express approval. The plaintiff swore that he and John "were partners in everything", that partnership funds purchased these two apartment houses and that, hence, he was entitled to an interest in the Irving Apartments as well as in the Arline Apartments.

The testimony is transcribed upon more than 600 pages, and is accompanied with numerous exhibits. We have read the transcript of the evidence with painstaking care and have given like attention to the exhibits. We have also studied carefully the briefs. Many months after both parties had concluded the presentation of the evidence and the matter was under the consideration of the trial judge, he indulgently permitted the plaintiff to reopen his case and present additional testimony; in fact, the trial judge, the Honorable Walter H. Evans, who is now a member of the United States Customs Court, in a spirit of fairness, stepped aside, after having announced the conclusion that the evidence did not warrant a finding that the parties had formed a partnership, and substituted in his stead the Honorable James Alger Fee, who is now a member of the United States District Court. After much additional testimony had been introduced, Judge Fee was of the same opinion as Judge Evans, and held that the facts did not warrant the establishment of a resulting trust.

In the interval that transpired between the presentation of the evidence to Judge Evans and that presented to Judge Fee, the plaintiff read the record of the testimony which had been introduced before Judge Evans and then altered his testimony to his personal advantage, in one important particular at least. For this important change he gave no explanation. The transcript of evidence plainly shows much handling

and in many instances dates have been changed, words stricken out and new ones substituted in their stead. The plaintiff, in the conduct of this litigation, has changed his attorneys frequently. His testimony is in conflict with that of all of the other members of his family.

The issues before us present questions of fact only. We readily subscribe to all of the propositions of law contained in appellant's brief. They, however, lend no assistance in the solution of the problem whether the father and son effected the partnership agreement alleged in the complaint. The able trial judges who saw the witnesses and noted their demeanor upon the stand, were in a much better position than are we to ascertain the truth. Our review of the evidence, however, has persuaded us that the contentions of the plaintiff are not substantiated by the proof. Our conclusion has been induced in a measure by the fact that the two circuit judges, who possessed the superior advantage of appraising the witnesses, rejected the plaintiff's contentions. We do not believe the occasion demands that we review in this decision the evidence nor set forth the comparison of the testimony which has brought us to our conclusion.

It follows from the foregoing that the decree of the circuit court will be affirmed. Costs will be allowed to neither party.

BEAN, C. J., RAND and KELLY, JJ., concur.